IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Jeffrey C., | ) | Case No.: 5:20-cv-03123-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Kilolo Kijakazi[1], Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

This social security matter is before the Court with the Report and Recommendation of United States Magistrate Judge Kaymani D. West ("Report and Recommendation" or "Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.).  Plaintiff Jeffrey C.[2] ("Plaintiff" or "Jeffrey") brings this action pursuant to 42 U.S.C. §§ 405(g), as amended, seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying him Disability Insurance Benefits ("DIB").  The Magistrate Judge issued a Report and Recommendation on October 19, 2021, recommending the Commissioner's decision be affirmed. (DE 23.)  On November 22, 2021, Plaintiff filed Objections to the Report and Recommendation, contending that the Report fails to adequately explain why certain medical opinions in support of Plaintiff's position were discounted.

Having carefully considered the Plaintiff's objections and the applicable law, the Court adopts the Report and Recommendation and affirms the Commissioner.

---

[1]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021; and therefore, he is substituted for Andrew Saul as the defendant in this suit.

[2]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. (DE 23.) However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary. Jeffrey was 49 years old at the time of the September 18, 2019, hearing. He completed high school and past relevant work ("PRW") was as a welding foreman. Plaintiff alleges the date of onset of his disability is July 31, 2017. (DE 23, p. 1.) Plaintiff testified that the most severe physical problems that prevent him from working are his neck, back, and knees. (DE 14-2, p. 49.)

Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[3] Instead, ALJs consider medical opinions using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. Id. § 404.1520c(b)(2). The new regulations further deem certain evidence inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). This includes statements on issues reserved to the Commissioner such as

---

[3] For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

whether a claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. § 404.1520b(c)(3).

On March 23, 2018, Dr. Muthamma completed a one-page questionnaire regarding Plaintiff answering five questions. (DE 14-7, p. 197.)  Dr. Muthamma responded "no" to the question asking if Plaintiff would be able to engage in anything more than sedentary work; he responded "yes" to the question asking if Plaintiff would "most probably have to rest away from the workstation for significantly more than an hour" if he attempted to work on an eight-hour day, five day per week basis; and he responded "yes secondary to pain" to the question asking if Plaintiff would have problems with attention and concentration sufficient to frequently interrupt tasks during the working day. (Id.)  When asked the bases for his opinion Dr. Muthamma noted: Patient has an inflammatory condition which has been well controlled but continues to have osteoarthritic problems of his right knee limiting his ability to walk up a flight of stairs or downstairs.  He also has difficulty standing or walking for a length of time.  In response to the final question the doctor indicated that, from the records available to him, Plaintiff was so impaired since July 2017. (Id.)

Counsel for Plaintiff interviewed Dr. Sanchez and drafted a statement signed by Dr. Sanchez on July 18, 2019. (DE 14-8, pp. 189-90.)  In the statement Dr. Sanchez indicates he "diagnosed [Plaintiff] with bilateral primary osteoarthritis of the knee, right knee degenerative posterior medial meniscus tear status post surgery with residual arthritic symptoms, left knee pain secondary to rheumatoid arthritis and patellofemoral chondromalacia, and rheumatoid arthritis." (DE 14-8, p. 190.)  He noted that a June 1, 2017, left knee MRI "showed tearing of the medial meniscus, small suprapatellar effusion, and grade 1 chondral change in the patellofemoral compartment." (Id.)  Dr. Sanchez indicated that on January 26, 2018, Plaintiff underwent a "right

knee arthroscopic partial medial meniscectomy with patellofemoral chondroplasty shaving." (Id.) He noted that Plaintiff still has right knee arthritic symptoms after the surgery, and although left knee surgery was not presently recommended, it may be recommended in the future. (Id.) Dr. Sanchez opined that Plaintiff "would be limited to sedentary activity due to his knee arthritis." (Id.) He also opined that due to his bilateral knee pain Plaintiff "would have problems with attention and concentration sufficient to interrupt tasks more than 15% of the working portion of the workday if he attempted to work on an 8-hour day, 5-day per week basis." (Id.) Dr. Sanchez indicated that Plaintiff's condition and these limitation have existed since July 2017. (Id.)

In her decision the ALJ indicated that she would consider the medical opinions using the factors in 20 C.F.R. § 404.1520. (DE 14-2, p. 21.) The ALJ stated she found that "the March 2018 opinion by Machimada Muthamma, M.D., (9F, see also 3F/22) and the July 2019 opinion by Anthony Sanchez, M.D., (22F) are not persuasive." (Id.) Regarding Dr. Muthamma, the ALJ noted: Dr. Muthamma is the claimant's treating rheumatologist, has treated the claimant on a[] consistent ongoing basis, and has prescribed related medications (3F, 8F, 11F, 17F, 21F). However, Dr. Muthamma's opinion is not fully consistent with the medical evidence of record and is not fully supported by the record as a whole. (Id.) The ALJ then outlined rheumatology examinations from July 2017 to July 2019, which "routinely showed multiple areas of tenderness," and at times showed synovitis of various joints, and reduced range of motion in the wrists. (Id.) The ALJ noted that "otherwise, exams showed no decreased range of motion, weakness, synovitis, or erythema. Further, Dr. Muthamma consistently noted that the claimant's disease prognosis was good (see e.g. 3F/8, 15, 23, 8F/10, 18, 26, 11F/7, 15, 17F/7, 16, 24, 21F/8)." (Id.) The ALJ recognized Dr. Sanchez as Plaintiff's "treating orthopedist, who performed his related surgery, and

4

saw the claimant on a consistent ongoing basis for his right knee pain, and prescribed related medication (1F, 7F, 12F, 18F)." (DE 14-2, p. 22.)

The ALJ determined that Dr. Sanchez's opinion was "not fully consistent with the medical evidence of record and is not fully supported by the record as a whole." (Id.)  In support of this finding the ALJ noted:  February 2018 follow up notes show that he was doing well, was on no pain medications, and ADLs were much improved (7F/11). March, May, and October 2018 follow up exams showed right knee had 115° flexion. Left knee had 110° flexion.  However, bilateral knees had no effusion, erythema, ecchymosis, or ligamentous laxity and was neurologically intact (12 F/8, 10, 17, 18 F/3).  August 2019 orthopedic exam showed that bilateral knees had some tenderness to palpation, positive patellar grind, and pain with varus and valgus stress.  However muscle strength was normal (23F/5-6). However, other exams were normal in these respects, for example in: June, October, November 2017, January, April, August, December 2018, June, and July 2019 (4F/23, 27, 6F/12, 16, 10 F/11, 16-17, 21, 13 F/6, 12, 19 F/8, 20 F/27, 32-33). Finally, February, June, and July 2018 notes show that the claimant was doing well (7F/11, 12 F/3, 8, 19).

## LEGAL STANDARD

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. See Mathews v. Weber, 423 U.S. 261 (1976).  The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge.  See 28 U.S.C. § 636(b)(l).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the report and recommendation

only for clear error. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted); see also Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.")

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[4] 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard. See Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. "Where conflicting

---

[4] "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). "It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

## DISCUSSION

Plaintiff objects to the Report and Recommendation contending "the new regulation does not excuse the [Administrative Law Judge ("ALJ")] from his burden to 'explain [his] reasoning for discounting medical opinion . . . to allow for meaningful judicial review" and further that it allows "silence in [Plaintiff's] records related to his [knee] impairment as support of an inconsistency." (DE 27, pp. 4, 5.)

As the Report and Recommendation discussed, under the new regulations, the ALJ need only explain how she considered "the most important factors" of supportability and consistency when discussing the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ's analysis comports with the new regulations as she properly considered the supportability and the consistency of Dr. Muthamma's opinions based on his own treatment notes and positive comments about Plaintiff's prognosis. The ALJ also considered Dr. Sanchez's opinion and supported her findings by noting records that indicated Plaintiff was not on pain medications and had improved activities of daily living. Additionally, although she was not required to do so by the regulations, 20 C.F.R. § 404.1520c(b)(3), the ALJ recognized each doctor's specialty as claimant's treating rheumatologist and treating orthopedist. (DE 14-2, pp. 21-212.)

Plaintiff again takes issue with the ALJ's citation to records that indicated Plaintiff had normal muscle strength because none of the cited records related to a knee examination. (DE 27, p. 3.) However, the ALJ cited to these same records three times throughout her decision—in her explanation of Plaintiff's residual functional capacity, in her discussion of Dr. Muthamma's opinion, and in her discussion of Dr. Sanchez's opinion. (DE 14-2, pp. 20-22.) Each time was after citing to an August 2019 orthopedic examination at Carolina Orthopaedic & Neurosurgical

7

Associates. (DE 14-8, pp. 193-196.) That examination, completed by Dr. Behr, was for a follow-up appointment for Plaintiff's back pain and noted the upcoming disability hearing on September 18, 2019, and that Plaintiff was seen by Dr. Sanchez regarding his knees. (DE 14-8, p. 193.) In the neurological/musculoskeletal portion of the physical examination of Plaintiff Dr. Behr noted cervical issues with flexion, tenderness on extension of the right elbow, and some tenderness in bilateral knees. (DE 14-8, pp. 195-96.) Dr. Behr also noted that manual muscle testing was 5/5. After citing to this exam, the ALJ noted the other records to show normal findings regarding muscle strength. Therefore, although the ALJ again cited the 2017-2019 records after discussing Dr. Sanchez's opinion on Plaintiff's knees, the ALJ's use of these citations seems to be for the purpose of showing other record evidence of normal musculoskeletal findings.

Since it is not for this Court to determine how it would rule on Plaintiff's claim for disability in the first instance, but rather to whether there is substantial evidence to support the ALJ's ruling, the Court overrules Plaintiff's Objections. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Here, the ALJ reviewed the evidence, explained the reasons for her determination, and the Court finds that determination is supported by substantial evidence in the record. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. at 1154 (internal citations omitted). The ALJ's analysis here appropriately explains how she considered the factors of supportability and consistency to support her consideration of the opinions of Drs. Muthamma and Sanchez. Accordingly, the Court finds that the ALJ's evaluation of the opinion evidence is in line with the revised regulations and is supported by substantial evidence.

Given the record as a whole, Jeffrey's mere disagreement as to the DIB decision is not enough to overturn the ALJ's decision. Therefore, the Report properly discussed the respective medical opinions, Plaintiff's objections are overruled, and the Court affirms the Commissioner's decision.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation and affirms the Commissioner.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

January 21, 2022
Greenville, South Carolina

9